1   Rajiv Dharnidharka (Bar No. 234756)
    rajiv.dharnidharka@us.dlapiper.com
2   **DLA PIPER LLP (US)**
    2000 University Avenue
3   East Palo Alto, CA 94303-2214
    Tel:    650.833.2000
4   Fax:    650.833.2001

5   Jeanette Barzelay (Bar No. 261780)
    jeanette.barzelay@us.dlapiper.com
6   **DLA PIPER LLP (US)**
    555 Mission Street, Suite 2400
7   San Francisco, CA 94105-2933
    Tel:    415.836.2500
8   Fax:    415.836.2501

9   Attorneys for Plaintiffs
    WALKME LTD. and WALKME, INC.
10

11                  UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14  WALKME LTD., an ISRAELI company         CASE NO. _____
    and WALKME, INC., a DELAWARE
15  corporation,                              **COMPLAINT FOR:**

16              Plaintiffs,                  **1. FEDERAL FALSE ADVERTISING
                                                (LANHAM ACT, 15 U.S.C. § 1125(A));**
17          v.
                                             **2. CALIFORNIA STATE FALSE
18  WHATFIX, INC., a DELAWARE                   ADVERTISING & DECEPTIVE TRADE
    corporation,                                PRACTICES (CAL. BUS. & PROF. CODE
19                                              § 17500);**
                Defendant.
20                                           **3. FEDERAL TRADEMARK INFRINGEMENT,
                                                FALSE DESIGNATION OF ORIGIN, AND
21                                              UNFAIR COMPETITION (LANHAM ACT,
                                                15 U.S.C. §§ 1117, 1125(A);**
22
                                             **4. COMMON LAW TRADEMARK
23                                              INFRINGEMENT, UNFAIR COMPETITION,
                                                AND MISAPPROPRIATION;**
24
                                             **5. CALIFORNIA STATE UNFAIR
25                                              COMPETITION (CAL. BUS. & PROF. CODE
                                                §§ 17200);**
26                                           **6. INDUCING BREACH OF CONTRACT;**

27                                           **7. BREACH OF CONTRACT.**

                                             **DEMAND FOR JURY TRIAL**
28
                                             **[REDACTED VERSION]**

DLA PIPER LLP (US)
SAN FRANCISCO
                                                                        COMPLAINT
    ACTIVE\1602068667.2

Plaintiffs WalkMe Ltd., an Israeli company, and WalkMe, Inc., a Delaware corporation (together, "Plaintiffs" or "WalkMe"), by and through their attorneys, hereby bring this Complaint against Defendant Whatfix, Inc. ("Defendant" or "Whatfix") and allege as follows:

<u>**NATURE OF ACTION**</u>

1.     WalkMe, a leading innovator in digital adoption and digital transformation technologies, brings this action to remedy serious and systematic unlawful activities by Whatfix that have caused, and continue to cause, substantial monetary and other harm to WalkMe. Whatfix's actions reflect a sustained pattern and practice of unlawful and unfair business conduct aimed at undercutting WalkMe's business and stealing its customer base through unfair competition and other illicit acts. Such acts include gaining unauthorized access to WalkMe's proprietary systems and confidential business information, actively seeking to interfere with WalkMe's customer relationships and contracts, making false and misleading advertising claims about WalkMe's products and capabilities, and repeatedly using WalkMe's distinctive and federally registered design mark without permission.

2.     This action is necessary to stop Whatfix's ongoing scheme of enticing WalkMe's customers, in violation of their subscription agreements with WalkMe, to provide Whatfix employees with unauthorized access to WalkMe's secure, password-protected software platform, in order to gain an unfair competitive advantage over WalkMe.  This action is also necessary to prevent Whatfix from continuing to deceive consumers through false and misleading comparative advertising messages and to benefit from continued infringements of WalkMe's distinctive brand and logo.  WalkMe seeks injunctive relief, actual damages, disgorgement of Whatfix's wrongfully earned profits, corrective advertising damages, costs, attorneys' fees, punitive damages, declaratory relief, and other relief as more fully set forth below.

<u>**INTRADISTRICT ASSIGNMENT**</u>

3.     This is an intellectual property action and therefore shall be assigned on a district-wide basis per Civil L.R. 3-2(c).

///

///

1

**THE PARTIES**

2    4.      Plaintiff WalkMe Ltd. is a company organized under the laws of Israel, with its

3  principal place of business at Walter Moses St. 1, Tel Aviv-Yafo, 6789903 Israel.

4    5.      Plaintiff WalkMe, Inc. is a corporation organized under the laws of the State of

5  Delaware, with its principal place of business in San Francisco, California.

6    6.      Upon information and belief, Defendant Whatfix, Inc. is a corporation organized

7  under the laws of Delaware, having its principal place of business in this District at 2107 N. 1st

8  Street, Suite 450, San Jose, California 95131.

9

**JURISDICTION AND VENUE**

10    7.      This is a civil action alleging federal trademark infringement, false advertising and

11  unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125; common law trademark

12  infringement, unfair competition and misappropriation; deceptive trade practices under California

13  law, including Business & Professions Code §§ 17200 and 17500; and inducing breach of

14  contract and breach of contract under California state law.

15    8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

16  U.S.C. §§ 1331, 1338(a) and (b), because WalkMe's claims address federal questions concerning

17  the Lanham Act.  This Court has supplemental jurisdiction over WalkMe's state law claims

18  because those claims are joined with substantially related claims under the Lanham Act.

19    9.      This Court has personal jurisdiction over Whatfix because its principal place of

20  business is in San Jose.  Furthermore, as alleged herein, at Whatfix's direction, numerous Whatfix

21  employees or agents gained access to and used certain of WalkMe's software systems, albeit

22  without authorization, and by doing so became subject to WalkMe's Terms of Service.  *See*

23  Exhibit A.  WalkMe's Terms of Service contain the following forum selection and venue

24  provision: "Any dispute arising out of or related to your use of the Service will be brought in, and

25  you hereby consent to exclusive jurisdiction and venue in, the competent courts of the San

26  Francisco County, California."

27    10.      Venue is also proper under 28 U.S.C. §§ 1391(b) and (c).

28  ///

**FACTUAL BACKGROUND**

**WalkMe's Business and Reputation for Quality Innovations**

11.    WalkMe was founded in 2011 as a company developing a computer system guidance and navigation tool.  WalkMe is the pioneer of its signature Digital Adoption Platform. Among other things, WalkMe's Digital Adoption Platform enables organizations to leverage data and take immediate action to simplify user experiences across enterprise applications.

12.    WalkMe's subscription-based Digital Adoption Platform offers a robust and customizable set of product features and functionalities.  This includes, for example, software solutions designed to aid WalkMe's customers, and its customers' employees, in the areas of digital transformation, technology change management, training and onboarding, support and self-service, data integrity and accuracy, and software application productivity and adoption.

13.    The commercial success of WalkMe's cutting-edge, proprietary Digital Adoption Platform is a product of WalkMe's innovation, substantial research and development, and customizations driven by data and analytics relating to how WalkMe's customers and their employees utilize (and under-utilize) enterprise software applications.

14.    As a leading innovator in the digital transformation and digital adoption space, WalkMe actively takes steps to protect and maintain its valuable intellectual property, including its patent and trademark rights.

15.    For example, in addition to its substantial common law trademark rights, WalkMe applied for and obtained a federal trademark registration (Reg. No. 7,097,155, Exhibit B) for its stylized logo ("WALKME Logo") (reproduced below), based on WalkMe's continuous and extensive interstate commercial use of the WALKME Logo to promote WalkMe's goods and services:



16.    WalkMe also actively takes steps to protect the confidential and proprietary business information that provides WalkMe a competitive advantage in the marketplace. For example, WalkMe's customer subscription agreements contain strict confidentiality provisions designed to guard against public disclosure of WalkMe's confidential, proprietary, and commercially sensitive data and information. Additionally, WalkMe's customer subscription agreements and/or Terms of Service contain Restricted Use provisions designed, in part, to prevent improper access to and use of WalkMe's platform to unfairly compete against WalkMe.

**Whatfix's Unfair Business Practices and Infringing Activities**

17.    WalkMe and Whatfix are direct competitors that vie for subscription agreements with the same potential customers. As part of its concerted effort to undercut WalkMe's business and steal WalkMe's customers, Whatfix has: (i) interfered with multiple WalkMe customer relationships and induced those customers to breach their subscription agreements with WalkMe by providing Whatfix employees with user accounts and log-in credentials; (ii) used those improperly issued log-in credentials to impersonate customer employees and gain unauthorized access and insight to WalkMe's proprietary systems and data for Whatfix's own competitive advantage; and (iii) published false and misleading comparative advertisements that materially mispresent the capabilities and attributes of WalkMe's products and services, in conjunction with its unauthorized use of WalkMe's federally-registered and distinctive WALKME Logo.

**A.    Whatfix's Unlawful Intrusions into WalkMe's Proprietary Systems**

18.    In or around April 2023, WalkMe detected and investigated suspicious user activities on its platform originating from one of its customer accounts. The WalkMe platform records session logs of user activity—a feature disclosed and available to customers that is designed to enhance the product functionality and user experience. From its investigation and review of recorded web sessions and activity logs, WalkMe discovered that Whatfix caused at least two of WalkMe's customers – ███████████████████████ – during term of their subscription agreements or contractual wind-down periods, to create several new accounts associated with ███ and ███ email addresses. Although these users appeared on their face to be ███ and ███ employees based on their company email extensions, in reality

these user accounts were created for and utilized by Whatfix employees, agents, or representatives ("Whatfix Users") for the illicit purpose of viewing, analyzing, downloading, and otherwise accessing WalkMe's proprietary systems, methodologies, and other information, in violation of the customers' subscription agreements as well as WalkMe's Terms of Service.

19.    Plaintiff WalkMe Ltd. and ████ entered into a Software as a Services Agreement effective June 28, 2017 ("████ Agreement"). The ████ Agreement "██████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████." The ████ Agreement was initially in effect for three (3) years, and it has since been renewed and extended. Pursuant to the ████ Agreement, WalkMe and ████ executed an Order Form relating to ██████████████████████ ████████████████████████████████████████████████, effective from November 1, 2022 to April 30, 2023. ████ elected not to renew this particular implementation and transitioned these specific services to Whatfix after the April 30, 2023 termination.

20.    The ████ Agreement contains a Confidentiality provision. This provision defines "Confidential Information" as "██████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████."

21.    The ████ Agreement's Confidentiality provision restricts the disclosure of Confidential Information as follows:

1



2

3

4

5

6

7

8

9

10

11 ▮▮▮▮.

12    22.    On or around April 21, 2023, while the ▮▮▮ Agreement and Order Form

13 relating to ▮▮▮▮▮▮ remained in effect, ▮▮▮ created three new user

14 accounts using ▮▮▮ email addresses: (1) apoorva.mittal@▮▮▮.com; (2)

15 sanjna.chebium@▮▮▮.com; and (3) aman.singh@▮▮▮.com.

16    23.    In view of the user activities that followed, WalkMe is informed and believes that

17 these accounts were created at Whatfix's direction for, or on behalf of, three Whatfix Users: (1)

18 Apoorva Mittal, (2) Sanjna Chebium, and (3) Aman Singh.

19    24.    According to the user activity logs and web sessions recorded and maintained by

20 WalkMe, these ▮▮▮ user accounts were utilized on numerous occasions between April 21 and

21 April 27, 2023, from IP addresses geolocated in India, to access various implementations of the

22 WalkMe platform.  WalkMe's records reflect that these accounts were used to gain unlawful

23 access to a host of confidential, commercially sensitive, and proprietary information, all within

24 the ▮▮▮ Agreement's definition of Confidential Information.

25    25.    For example, WalkMe's records reflect that these three Whatfix Users logged into

26 the ▮▮▮ customer account and collectively accessed at least six separate implementations of

27 the WalkMe platform, only one of which relates to ▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮.

26.    Plaintiff WalkMe Inc. and ████ entered into a Master Subscription Agreement effective March 28, 2019 ("████ Agreement").  Through the ████ Agreement, "████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████." The initial Order Form corresponding to the ████ Agreement was in effect until March 31, 2021.  WalkMe and ████ later executed a renewal Order Form effective from April 1, 2021 to March 31, 2023.

27.    The ████ Agreement contains a Confidentiality provision which defines "Confidential Information" as:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

28.    The ████ Agreement restricts the disclosure of Confidential Information as follows:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

COMPLAINT



29.    In addition to the Confidentiality provisions, the ███ Agreement also contains a Restricted Use provision which provides, in relevant part:

1   ████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ██████████████████████; ....

4       30.     During its investigation of the IP addresses associated with suspicious ████

5   ████ users, WalkMe discovered another suspicious user account belonging to ████ that

6   logged in from an IP address geolocated in India.

7       31.     Upon further investigation, WalkMe discovered the existence of three ████ user

8   accounts, corresponding to purported ████ email addresses, that were being used by Whatfix

9   Users to access WalkMe's platform: (1) rbhati@████com, (2) pprige@████com, and (3)

10  pbhattacharya@████com.

11      32.     In view of the user activities that followed, WalkMe is informed and believes that

12  these accounts were created at Whatfix's direction for, or on behalf of, three Whatfix Users:

13  (1) Rupender Bhati, (2) Paula Prigge, and (3) Priyansh Bhattacharya.

14      33.     According to user activity logs and web sessions recorded and maintained by

15  WalkMe, these user accounts were utilized on numerous occasions from at least March 28 to

16  April 14, 2023, while the renewal Order Form and ████ Agreement were either still in effect

17  (through March 31, 2023) or in a ████ wind-down period (beginning April 1, 2023) ████

18  ████████████████████████████████████████████████████

19  ████. WalkMe's records reflect that these accounts were used to gain unlawful access to

20  confidential, commercially sensitive, and proprietary information, all within the ████

21  Agreement's definition of Confidential Information.

22      34.     WalkMe's recorded web sessions and activity logs show that the Whatfix Users

23  explored and compromised various aspects of WalkMe's systems, targeting workflows, tasks,

24  content, permissions, integration capabilities, and user engagement metrics to gain insights into

25  WalkMe's product and customized user experience.  The Whatfix Users also accessed underlying

26  rule configurations driving the workflows and content displayed at customer deployment sites,

27  downloaded PDFs, and accessed supporting documentation to gain a deeper understanding of

28  WalkMe's processes and product.

35.    WalkMe's recorded web sessions and activity logs further reveal that the Whatfix Users accessed numerous features, deployments, and data that would allow Whatfix to gain competitive, proprietary knowledge and information to which it otherwise would not have access, including, but not limited to insights and knowledge regarding WalkMe's: (i) product performance, operation, and user engagement metrics; (ii) workflows, content, and product algorithms; (iii) implementation if its software at customer sites, including configurations, workflows, and content structuring; (iv) customer requirements and pain points; and (v) functionality, design, and potential system vulnerabilities.

36.    This information is proprietary to WalkMe and Confidential Information under the ███ Agreement and the ███ Agreement. The Whatfix Users' improper access of and visibility into such information affords Whatfix a substantial and unfair competitive advantage by enabling Whatfix to, among other things, unlawfully replicate WalkMe's solutions, features, and customizations and undercut WalkMe with a less costly offering, tailor its product offerings to specific customers based on insights gained, and unlawfully displace WalkMe from its existing customer accounts using WalkMe's own application and data.

37.    The Whatfix Users had no lawful or legitimate business purpose to access WalkMe's platform, let alone the customized modules, data and analytics specific to the ███ and ███ customer experiences.  The ███ Agreement and ███ Agreement prohibit these customers from providing access to or disclosing WalkMe Confidential Information to the Whatfix Users or using such information in a manner that would harm or competitively disadvantage WalkMe.

38.    Upon information and belief, Whatfix knew that WalkMe had subscription agreements with ███ and ███ when it directed or caused these customers to enable Whatfix Users to gain unauthorized access to WalkMe's systems.  In order for the Whatfix Users to gain access to WalkMe's secure, password-protected software platform, Whatfix knew that it required log-in credentials generating from and associated with an active WalkMe customer account and that the Whatfix Users had to impersonate ███ and ███ employees.

39.    WalkMe and Whatfix are direct competitors in the digital adoption and digital

transformation software solution space and vie for business from the same customers and

potential customers, including ███ and ███ As a matter of general industry practice,

customers enter into subscription-based agreements with providers like WalkMe and Whatfix in

order to access and use their software products and services.  At or around the time that Whatfix

directed or caused ███ and ███ to create user accounts for, or on behalf of, the Whatfix

Users, Whatfix was actively seeking to acquire ███ and ███ as new customers from

WalkMe.  After WalkMe's Order Form with ███ terminated and its services agreement with

███ terminated, both customers transitioned either all or a portion of their WalkMe business to

Whatfix.  Through this process, WalkMe is informed and believes that Whatfix knew or became

aware that WalkMe had subscription agreements in place with both ███ and ███

40.     By directing or causing ███ and ███ to create user accounts and log-in

credentials for, or on behalf of, the Whatfix Users, Whatfix committed an intentional act designed

to induce a breach or disrupt the contractual relationship between WalkMe and these customers.

As a direct and proximate result of Whatfix's conduct, ███ breached at least the

Confidentiality provision of the ███ Agreement, and ███ breached at least the

Confidentiality and Restricted Use provisions of the ███ Agreement, recited in relevant part

above.

41.     If Whatfix had not intentionally directed or caused these customers to create and

provide the Whatfix Users with user accounts and log-in credentials to access WalkMe's

proprietary platform containing confidential business information and commercially sensitive

data, WalkMe is informed and believes that these customers would not have violated, and would

have no reason to violate, the Confidentiality provisions and/or Restricted Use provisions set

forth in their customer agreements.

42.     In addition to the subscription agreements that WalkMe enters into with its

customers, WalkMe implements Terms of Service, published on its website, which govern the use

of certain WalkMe systems and services, including by non-customer end-users.  *See* Exhibit A.

As alleged herein, the Whatfix Users accessed WalkMe's Services unlawfully, without any valid

authorization, and without any legitimate business purpose.  By visiting and accessing certain

WalkMe systems and services governed by the Terms of Service, albeit by unlawfully impersonating customer employees, the Whatfix Users became legally bound by the contractual duties and obligations that apply to any end-user under the Terms of Service.

43.  WalkMe's Terms of Service govern use of WalkMe's website, "any additional website and/or web pages owned and/or operated by WalkMe…, as well as the services listed in Section 1 [of the Terms of Service], including [WalkMe's] Community Portal."  *See* Exhibit A. Section 1, in turn, provides that the Terms of Service govern access and use of the following WalkMe services: WalkMe Free Edition, WalkMe Editor, WalkMe Player, WalkMe Analytics, WalkMe Visions, WalkMe University, WalkMe World Community Portal, and QA Recorder.  *Id*.

44.  Section 6 of the Terms of Service ("Use Restrictions") enumerates "[c]ertain conduct [that] is strictly prohibited on and/or with respect to the Services."  Section 6 cautions that "failure to comply with the provisions set forth below may result, in the termination or suspension of your access to the Services, which is in WalkMe's sole and absolute discretion, and may also expose you to civil and/or criminal liability.  Exhibit A, § 6.

45.  Pursuant to Section 6 of the Terms of Service, end-users of WalkMe's Services agree not to do the following, among other things, by themselves or on anyone else's behalf:

> (i)  copy, modify, adapt, translate, reverse engineer, decompile, or disassemble the Services (or any part thereof);… (vii) sell, license, or exploit for any commercial purposes any use of or access to the Services; (viii) frame or mirror any parts of the Services without WalkMe's prior express written authorization; (viv) create a database by systematically downloading and storing all or any of the content from the Services; (x) impersonate any person or entity or provide false or misleading personal information; (xi) use the Services for any illegal, immoral or unauthorized purpose; and (xii) use the Services in any way that violates any applicable federal, state, local, or international law or regulation (including, without limitation, any laws regarding the export of data or software to and from the United States or other countries).

1     *Id.* at § 6.

2       46.     In view of the Whatfix Users' activities described herein, it is evident that the

3 Whatfix Users flagrantly violated at least Section 6 of WalkMe's Terms of Service. Among other

4 things, the Whatfix Users impersonated WalkMe's customers' employees to gain access to

5 WalkMe's platform and specifically targeted the WalkMe platform and associated modules for

6 prohibited purposes, such as copying, reverse engineering, and/or commercially exploiting

7 portions of the Services governed by WalkMe's Terms of Service, including but not limited to

8 WalkMe Editor, WalkMe Player, and WalkMe Analytics.

9       **B. Whatfix's False and Misleading Advertising and Trademark Infringements**

10       47.     Whatfix's unlawful conduct and unfair business practices extend to its product

11 marketing and advertising activities. In attempting to lure potential customers to Whatfix and

12 away from WalkMe, WalkMe has disseminated false and/or misleading comparative advertising

13 claims that materially misstate the functionality and capabilities of WalkMe's competing Digital

14 Adoption Platform. Additionally, in the context of its comparative advertising materials that

15 promote Whatfix's competing goods and services, Whatfix has repeatedly used the WALKME

16 Logo, without WalkMe's permission, in violation of WalkMe's valuable trademark rights.

17       48.     Whatfix has repeatedly engaged in this pattern of unlawful conduct and unfair

18 business practices for years. WalkMe first notified Whatfix in 2018 of false and misleading

19 statements made about WalkMe's products and services in the context of a "Whatfix Vs.

20 WalkMe" comparative advertising chart published on Whatfix's website at that time, as well as

21 Whatfix's unauthorized use of WalkMe's stylized design mark. In response, Whatfix appeared to

22 take at least some corrective action by removing from its webpages the false statements that

23 WalkMe flagged.

24       49.     More recently, on several Whatfix website URLs, Whatfix publishes "Comparison

25 Tables" that purport to identify common and differentiating product features and functionalities

26 among industry competitors, including WalkMe and Whatfix. Whatfix maintains an entire

27 webpage dedicated to "Exploring WalkMe Alternatives and Competitors," in which Whatfix

28 claims, without any support, that "leading enterprises believe Whatfix is easier to use, delivers

better returns, provides stellar customer support and is a better overall platform in comparison to WalkMe….” *See* <u>Exhibit C</u>.

50.    The “Comparison Tables” published on this webpage (and others) list a selective subset of product capabilities, which Whatfix posits to be material considerations for customers deciding between WalkMe or an alternative competitive Digital Adoption Platform solution:

## WalkMe Competitors: Comparison Tables

Ultimately, choosing a WalkMe alternative comes down to comparing features and value for money and finding the best fit for your business.

To make your decision easier, we created comparison tables so you can easily see the differences between WalkMe and its top competitors.

51.    In its “Comparison Tables” (reproduced below), Whatfix has falsely claimed that WalkMe lacks certain functionalities (boxed in red) that Whatfix purports to provide:

| FEATURE | WALKME | WHATFIX | USERLANE | PENDO |
|---|---|---|---|---|
| Create in-app content such as guided product tours, walkthroughs, smart tips, task lists, and more. | ☑ | ☑ | ☑ | ☑ |
| Embed knowledge base wiki that link to external resources and track support question and search trends | ⊙ | ☑ | ⊙ | ⊙ |
| Directly integrates with your LMS | ⊙ | ☑ | ☑ | ⊙ |
| SCORM compliant | ⊙ | ☑ | ⊙ | ⊙ |
| Autogenerate content into multiple formats and languages, as well as automatically pull in existing training content into your self-help wiki | ⊙ | ☑ | ⊙ | ⊙ |
| Collect feedback with in-app surveys | ☑ | ☑ | ☑ | ☑ |
| Communicate with users directly with in-app messaging | ⊙ | ☑ | ☑ | ☑ |
| Train users on mobile and web-based apps | ☑ | ☑ | ☑ | ☑ |
| Integrates directly with all major enterprise software vendors including Salesforce, SAP, Microsoft, and more | ☑ | ☑ | ☑ | ☑ |

52.    Contrary to Whatfix’s claims, WalkMe’s products can, and do, perform these capabilities that Whatfix asserts are missing:

a.     "**Embed knowledge base wiki that links to external resources and track support questions and search trends**." WalkMe users can link to a wiki or knowledge base from within WalkMe. WalkMe supports a variety of knowledge base integrations, including but not limited to, Atlassian Confluence, Google Docs, and Microsoft Word.

b.     **SCORM compliant:** WalkMe does, in fact, support SCORM. WalkMe's customers can create and deliver SCORM-compliant courses to their learners, as reflected in the below screenshot from WalkMe's online marketing collateral (annotation supplied). (*See* https://www.walkme.com/glossary/digital-adoption-platform/.) WalkMe also supports a variety of other LMS formats, including TinCan, AICC, and xAPI.



c.     **Communicate with users directly with in-app messages:** WalkMe enables direct communication with specific users, through use of the WalkMe API to send users in-app messages. This allows WalkMe customers to send messages to users based on their profile, activity, or other criteria.

53.     Reproduced below are additional instances within the "WalkMe Alternatives"

webpage where Whatfix repeats the false statement that Whatfix provides "SCORM compliance," whereas WalkMe and other competitors do not. As detailed above, such statements are literally false and/or misleading with respect to WalkMe. Thus, it is false and misleading for Whatfix to promote SCORM compliance as a feature that differentiates Whatfix from WalkMe.

Whatfix, though, stands out because of its extensive feature options and ease of use.
When you compare Whatfix to WalkMe and the other WalkMe alternatives, you'll see that it stands out for a few reasons:

- Contextualized guidance enables end users to with step-by-step walkthroughs, nudges, task lists, reminders, and prompts, empowering them to achieve their tasks and processes more efficiently through a better user experience.

- Self help supports users in the flow of work. Self help integrates with your knowledge base, process documentation, LMS, training materials, third-party links, videos, and more, allowing users to search for contextual documentation without leaving their digital apps. These self-help answers are often attached to in-app guided flows, and is prompted by a user click.

- Smart tips provide organizations a way to provide contextual nudges and alerts for company announcements, product news, new feature launches, process changes, and more.

- SCORM compliance allows seamless integration with your LMS so that you can convert walk-throughs to interactive courses.

- No-code creation makes it easy for your team to create high-quality training content without tying up developers and engineers.

- Built-in analytics allow you to easily track user progress and monitor search queries so you can add walk-throughs and self-help materials as needed.

- Feedback surveys enable teams to gather more employee and customer feedback – from simple NPS surveys to end-user feedback on in-app experiences – with a simple, no-code, branded survey experience.

\*　　　　　　\*　　　　　　\*

Here are a few additional reasons to choose Whatfix as your DAP:

- Easy installation: While WalkMe installation requires some technical knowledge, starting with Whatfix is as simple as adding a browser extension.

- Automated content creation: When you create in-app guided flows and walkthroughs, Whatfix automatically generates the information in multiple content formats, including slideshows and videos.

- SCORM compliance: Whatfix's SCORM-compliant packages enable you to easily upload walk-throughs to your learning management system (LMS) to create interactive courses.

- Contextualized guidance: Whatfix offers relevant walkthroughs and self-help articles, depending on the person's role and their location within the application.

- Support for desktop, mobile, and web devices: Whatfix provides DAP solutions for any type of application, whether it's SaaS web applications accessed in your browser, on-premise desktop applications, or mobile apps.

54.　　The "Comparisons Table" and related comparative advertising messages published on multiple Whatfix webpages contain, at least, the above-referenced false and/or misleading

1    statements concerning the features and functionality of WalkMe's services.  Such falsehoods

2    contained in the "Comparisons Tables," and reiterated in competitive comparison literature

3    published through multiple Whatfix URLs, relate to capabilities that are inherent to the

4    functionality of WalkMe's services and that materially impact consumers' purchasing decisions,

5    as Whatfix itself posits in its promotional materials.

6         55.    Whatfix's misrepresentations concerning WalkMe's purportedly absent

7    capabilities influence potential customers to purchase Whatfix's competing solution over

8    WalkMe's, which, upon information and belief, is Whatfix's specific intent in publishing these

9    comparative advertising statements.  Whatfix's conduct has caused and is likely to cause WalkMe

10   monetary damage in the form of lost sales and lost profits.

11        56.    Whatfix's false and/or misleading representations of fact have harmed and

12   diminished, and are likely to and will inevitably harm and diminish, WalkMe's goodwill,

13   business reputation and credibility in the trade, and the demand for WalkMe's products.  Thus,

14   Whatfix's false and/or misleading statements, alone and in combination, are likely to cause

15   WalkMe irreparable commercial and reputational harm.

16        57.    Whatfix's false and/or misleading representations were made in bad faith and with

17   intent to confuse the relevant consumers and with intent to bolster sales of Whatfix's products at

18   the expense of WalkMe's products.

19        58.    Additionally, in the context of its comparative advertising webpages that promote

20   Whatfix's competing goods and services, Whatfix, once again, used the WALKME Logo,

21   without WalkMe's permission, in violation of WalkMe's valuable federal and common law

22   trademark rights.

23        59.    For example, in its webpage comparing "WalkMe vs. Whatfix," and other

24   derivative pages that compare WalkMe to other industry competitors, Whatfix reproduced

25   WalkMe's distinctive and protected logo without authorization (*See* Exhibit D):

26   ///

27   ///

28   ///

1
2
3
4
5
6
7
8
9
10
11
12



13

14
15
16
17

60.    Additionally, in its competitive product comparisons (Exhibit D), and, at least, another Whatfix's corporate-sponsored blog post titled, "13 Best Digital Adoption Platforms (DAPS) in 2023" (https://whatfix.com/blog/best-digital-adoption-platforms/), Whatfix publishes a distorted but confusingly similar version of the WALKME Logo without authorization:



18
19
20
21
22
23
24
25
26

27
28

61.    WalkMe's commercial products and services are readily identifiable without use or publication of the WALKME Logo, for example, by referencing WalkMe's brand, products or

DLA PIPER LLP (US)
SAN FRANCISCO

COMPLAINT

1   services by word or name.  In using the WALKME Logo without WalkMe's permission, Whatfix

2   has used more of WalkMe's trademarks than necessary for purposes of advertising and promoting

3   Whatfix's competing products and services.  Whatfix could adequately communicate any fair and

4   truthful advertising message concerning WalkMe's competing products and services without

5   using the visual trappings of the WalkMe brand and distinctive WALKME Logo.

6       **C.  WalkMe's Pre-Suit Cease-and-Desist Correspondence with Whatfix**

7       62.    After discovering Whatfix's illicit conduct described above, on or about June 23,

8   2023, WalkMe sent Whatfix a cease-and-desist letter through its counsel (the "June 23 Letter").

9       63.    The June 23 Letter informed Whatfix of the Whatfix Users' activities that WalkMe

10  had uncovered, demanded that Whatfix immediately cease and desist from any current or future

11  attempts to gain unauthorized access to WalkMe's non-public platform, and demanded that

12  Whatfix account for every instance in which any Whatfix employee or agent has logged into or

13  accessed any non-public WalkMe system in the past five years.

14      64.    The June 23 Letter further notified Whatfix of the false and misleading advertising

15  statements complained of herein, as well as Whatfix's repeated unauthorized use of the

16  WALKME Logo on Whatfix's webpages.  WalkMe demanded that Whatfix immediately take

17  steps to remove from its advertising, marketing, or promotional literature any and all: (i)

18  publication of the false and misleading comparative advertising statements, and (ii) use,

19  publication, or display of the WALKME Logo.

20      65.    By letter dated June 30, 2023, Whatfix responded to the June 23 Letter (the "June

21  30 Letter).  In its June 30 Letter, Whatfix acknowledged that its employees or agents gained

22  access to WalkMe's non-public platform through WalkMe customer accounts.  Yet, Whatfix did

23  not consent to WalkMe's demand to cease-and-desist from accessing WalkMe's non-public

24  platform through customer accounts or to account for any past instances of Whatfix logging into

25  and accessing non-public WalkMe systems.

26      66.    In its June 30 Letter, Whatfix also acknowledged that WalkMe was correct

27  regarding one of the three comparative advertising statements highlighted in WalkMe's June 23

28  Letter (*i.e.*, "in-app messaging"), and agreed to "adjust its comparisons accordingly."  However,

with respect to the other two comparative advertising statements highlighted in the June 23 Letter and the instant Complaint, Whatfix refused to acknowledge that the messages were false or misleading and refused to take any corrective action.  Whatfix further disagreed that it was making impermissible use of the WALKME Logo, but agreed "as an accommodation, going forward, [to] use the word mark 'WalkMe' and discontinue use of the logo mark."

67.    As of the date of this Complaint, Whatfix appears to have modified certain of its webpages to address the false and misleading statements concerning "in-app messaging" and to remove some, but not all, publications and use of the WALKME Logo, while elsewhere continuing to make other false and misleading statements to consumers regarding WalkMe as described herein and continuing to engage in improper use of the WALKME Logo (or a distorted, confusingly similar variation thereof).

68.    Although WalkMe's investigation of suspicious user activities remains ongoing, WalkMe is informed and believes that, since WalkMe sent Whatfix the June 23 Letter, Whatfix's attempts to unlawfully access WalkMe's proprietary platform and interfere with active WalkMe customer relationships have continued and extended to additional customer accounts.

69.    In light of Whatfix's refusal to cease-and-desist from its unauthorized intrusions into WalkMe's proprietary systems; refusal to correct all of the false and misleading advertisements highlighted in the June 23 Letter and the instant Complaint; failure to remove all unauthorized use and publications of the WALKME Logo on Whatfix webpages; and repeated pattern of unlawful and unfair competitive practices, WalkMe brings this action against Whatfix to protect and enforce its valuable intellectual property rights and propriety business information, compensate WalkMe for the harms caused directly and proximately by Whatfix's misconduct, and mitigate the ongoing and irreparable injury to WalkMe's business, commercial reputation, and goodwill.

**FIRST CAUSE OF ACTION**
**(Federal False Advertising in Violation of 15 U.S.C. § 1125(a))**

70.    WalkMe realleges and incorporates the previous paragraphs of this Complaint as though fully set forth herein.

71.     Whatfix's false and misleading advertisements and statements constitute false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     Whatfix has made and continues to make false and misleading representations concerning WalkMe's products in Whaftix's advertisements, marketing materials, and/or oral statements, throughout the United States, and upon information and belief in California, with the intent to mislead and deceive consumers.

73.     Upon information and belief, Whatfix's false and/or misleading statements have actually deceived or tended to deceive a substantial segment of the relevant consumers for the parties' competing digital adoption and digital transformation software services.

74.     Upon information and belief, Whatfix's false and/or misleading statements are material in that they have influenced the purchasing decisions of digital adoption and digital transformation software services throughout the United States.

75.     Whatfix's false and misleading statements were and are made in interstate commerce.

76.     Whatfix's improper activities, as described herein, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act.  Indeed, Whatfix knew or reasonably should have known that its advertisements and marketing materials were false and/or misleading.  Therefore, Whatfix's false advertising of its products was purposeful and knowing and merits a finding that exceptional circumstances exist sufficient to support an award of attorneys' fees and treble damages.

77.     As a direct and proximate result of the acts of Whatfix as alleged herein, WalkMe has been damaged through, *inter alia*, lost sales and profits, lost customers, and lost market share.

78.     As a direct and proximate result of the acts of Whatfix as alleged herein, WalkMe has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Whatfix is profiting at WalkMe's expense.

79.     WalkMe has suffered an irreparable injury.

80.     WalkMe has no adequate remedy at law.

81.     The balance of hardships favors granting WalkMe injunctive relief.

82.     The public interest would be served by enjoining Whatfix because it would, among other reasons, stop Whatfix's false and misleading advertising and consumer deception from continuing.

### SECOND CAUSE OF ACTION
**(False Advertising Pursuant to Cal. Bus. & Prof. Code § 17500 et seq.)**

75.     WalkMe realleges and incorporates the previous paragraphs of this Complaint as though fully set forth herein.

76.     Whatfix advertises its products, including its competing digital adoption and digital transformation software solutions, in the State of California.  In so doing, Whatfix makes representations concerning the effectiveness and viability of its products and compares its products to those of WalkMe.  As set forth above, these representations are false and misleading.

77.     Whatfix knew that the statements in its advertising are untrue or misleading or, by the exercise of reasonable care, should have known that the statements are untrue or misleading.

78.     Whatfix's conduct constitutes false advertising under Cal. Bus. & Prof. Code § 17500 et seq.  Such false advertising has been done willfully with the intent to harm WalkMe.

79.     Whatfix has benefitted from the sale of its products to consumers who relied upon the untrue and misleading representations set forth herein.

83.     Whatfix's false and misleading statements were intended to competitively disadvantage WalkMe in the State of California and give Whatfix an unfair advantage in the competitive marketplace.

84.     Whatfix's false advertising has caused and is causing damage and irreparable harm to WalkMe in the form of lost profits, loss of market share, loss of sales, and loss of reputation and goodwill, which damage and injury will continue if not enjoined.

### THIRD CAUSE OF ACTION
**(Federal Trademark Infringement, False Designation of Origin, and Unfair Competition Under 15 U.S.C. §§ 1114 & 1125(a))**

80.     WalkMe realleges and incorporates the previous paragraphs of this Complaint as though fully set forth herein.

81.     WalkMe is the owner of the WALKME Logo.

82. The WALKME Logo is on the Principal Register of the United States Patent and Trademark Office.

83. The WALKME Logo is inherently distinctive, and WalkMe has used and marketed the WalkMe Logo to distinguish and identify its company and to promote its products and solutions in the marketplace such that, in the minds of the public, the primary significance of the WALKME Logo is to identify WalkMe as the source of its products and services.

84. Through its extensive and continuous use, the WALKME Logo and the goodwill associated with it in the United States and throughout the world are of significant value, and have become universally associated in the public mind with WalkMe, its products and services, and the very highest quality and reputation.

85. Whatfix's intentional, unauthorized use of the WALKME Logo in Whatfix's advertising, promotion, and marketing materials is causing and is likely to continue causing consumer confusion, mistake, or deception, and constitutes federal trademark infringement, false designation of origin, and/or unfair competition in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

86. Whatfix was fully aware of WalkMe, WalkMe's competing products and services, and the WALKME Logo before copying and using the WALKME Logo in the context of advertising Whatfix's products on its website and corporate-sponsored online blog pages. WalkMe's products and services are readily identifiable without use or publication of the WALKME Logo, and Whatfix has used more of WalkMe's trademarks than would be necessary to communicate a fair and truthful comparative advertising message.

87. As a result of Whatfix's acts of trademark infringement, false designation of origin, and unfair competition, Whatfix has diminished the reputation and distinctiveness of WalkMe and its products and services.

88. As a result of Whatfix's unlawful conduct, WalkMe has been and continues to be substantially and irreparably harmed. If Whatfix's infringement and unlawful acts are permitted to continue, WalkMe will sustain further damage and irreparable injury. Through such unfair acts and unauthorized use of the identical or near identical and confusingly similar WALKME Logo,

1   the value of the WALKME Logo will be diminished or destroyed, for which damage WalkMe

2   cannot be adequately compensated at law.

3       89.    Whatfix has derived unlawful gains and profits from its infringement of the

4   WALKME Logo, and Whatfix thereby has caused loss and damage to the goodwill in the

5   WALKME Logo.  As a direct and proximate result of Whatfix's infringement, WalkMe has

6   suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, in an amount

7   as yet unknown but to be proven at trial.

8       90.    WalkMe's damages may be trebled pursuant to Section 35(a) of the Lanham Act,

9   15 U.S.C. § 1117(a), because Whatfix's actions have been committed willfully, with intent to

10  deceive and with full knowledge of WalkMe's prior use of the WALKME Logo.

11      91.    WalkMe is therefore entitled to a preliminary and permanent injunction enjoining

12  and restraining Defendants from using the WALKME Logo or anything confusingly similar to the

13  WALKME Logo.

14                    **FOURTH CAUSE OF ACTION**
15  **(Common Law Trademark Infringement, Unfair Competition, and Misappropriation)**

16      92.    WalkMe repeats and realleges the previous paragraphs of the Complaint as though

17  fully set forth herein.

18      93.    Whatfix has infringed the WALKME Logo in violation of WalkMe's proprietary

19  rights and has engaged in false and misleading advertising.  Such acts constitute trademark

20  infringement, unfair trade practices, and unfair competition under the common law.

21      94.    Whatfix's conduct is intended to exploit the goodwill and reputation associated

22  with WalkMe's products and services and the WALKME Logo.

23      95.    Whatfix's activities described above have at all times been willful and/or knowing.

24      96.    As a direct and proximate result of Whatfix's actions described above, WalkMe

25  has been damaged and will continue to be damaged.

26  ///

27  ///

28  ///

**FIFTH CAUSE OF ACTION**
**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.)**

97.     WalkMe repeats and realleges the previous paragraphs of the Complaint as though fully set forth herein.

98.     California's Unfair Competition Law prohibits "unfair competition," which is defined broadly to include "any unlawful, unfair or fraudulent business act or practice."

99.     Whatfix's use of and marketing of products via advertisements and images that infringe the WALKME Logo, as alleged above, constitutes unfair competition and an unlawful and/or unfair business practice in violation of Sections 17200 et seq. of the California Business and Professions Code.

100.     Whaftix's unfair competition practices, namely, the unauthorized publication and use of the WALKME Logo, have been willful and have been committed with the knowledge of WalkMe's business and use of the WALKME Logo.

101.     Whatfix's use of the WALKME Logo, in combination with its campaign of false and/or misleading comparative advertising statements, has allowed Whatfix to unfairly benefit from and trade off of the distinctiveness, reputation, and goodwill associated with WalkMe's goods and services and the WALKME Logo, and to confuse, mislead, and/or deceive customers and potential customers of Whatfix's and WalkMe's competing products and services.  WalkMe's products and services are readily identifiable without use or publication of the WALKME Logo, and Whatfix has used more of WalkMe's trademarks than would be necessary to communicate a fair and truthful comparative advertising message to relevant consumers.

102.     As a result of Whatfix's acts of unfair competition, WalkMe has been and continues to be substantially and irreparably harmed.  If Whatfix's unfair competition is permitted to continue, further damage and irreparable injury will be sustained by WalkMe.  Through such unfair acts and use of the same or confusingly similar trademarks, the value of the WALKME Logo will be diminished or destroyed, for which damage WalkMe cannot be adequately compensated at law.

103.    WalkMe has derived unlawful gains and profits from its acts of unfair competition, as alleged above, and has caused loss and damage to WalkMe, WalkMe's goodwill, and the WALKME Logo.  WalkMe has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, in an amount as yet unknown but to be proven at trial.

### SIXTH CAUSE OF ACTION
### (Inducing Breach of Contract)

104.    WalkMe repeats and realleges the previous paragraphs of the Complaint as though fully set forth herein.

105.    At all times relevant to the conduct alleged herein, WalkMe had valid subscription agreements with customers ███ and ███ defined and described above as the ███ Agreement and ███ Agreement.

106.    Upon information and belief, Whatfix had knowledge of the ███ Agreement and the ███ Agreement.

107.    By directing or causing ███ and ███ to create user accounts and log-in credentials for, or on behalf of, the Whatfix Users, Whatfix committed an intentional act designed to induce a breach or disrupt the contractual relationship between WalkMe and these customers. As a direct and proximate result of Whatfix's conduct, ███ breached at least the Confidentiality provision of the ███ Agreement, and ███ breached at least the Confidentiality and Restricted Use provisions of the ███ Agreement, recited in relevant part above.

108.    If Whatfix had not intentionally directed or caused ███ and ███ to create and provide the Whatfix Users with user accounts and log-in credentials to access WalkMe's proprietary platform, WalkMe is informed and believes that these customers would not have violated, and would have no reason to violate, the Confidentiality and/or Use Restriction provisions set forth in their customer agreements.

109.    As a direct and proximate result of Whatfix's actions described above, WalkMe has been damaged and will continue to be damaged due to the loss of confidential and proprietary

data and business information, loss of business and profits, and loss of goodwill and reputation as a leading innovator in the industry.

### SEVENTH CAUSE OF ACTION
#### (Breach of Contract)

110.    WalkMe repeats and realleges the previous paragraphs of the Complaint, as if set forth herein in full.

111.    WalkMe's Terms of Service are a valid and enforceable contract between WalkMe and end-users which governs access and use of WalkMe's Services.

112.    By accessing and using certain WalkMe Services, the Whatfix Users were bound by the contractual obligations, terms, and conditions set forth in the Terms of Service.

113.    At all times, WalkMe has performed and satisfied all of its duties and obligations under the Terms of Service.

114.    Whatfix breached the Terms of Service by violating, at a minimum, the Use Restrictions set forth in Section 6.  As detailed above, Whatfix violated the Use Restriction provisions at least by: (i) directing or causing the Whatfix Users to falsely impersonate WalkMe's customers' employees to gain access to and use certain WalkMe Services that Whatfix had no legal right or legitimate reason to access or use; and (ii) accessing and using the WalkMe Services for prohibited purposes, including without limitation, copying, downloading, reverse engineering, and/or commercially exploiting portions of the Services for Whatfix's competitive advantage and to WalkMe's detriment.

115.    As a direct and proximate result of Whatfix's breach, WalkMe has been irreparably harmed and has suffered monetary damage, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, WalkMe prays that the Court:

1.    Issue preliminary and permanent injunctive relief prohibiting Whatfix from making the false or misleading statements complained of herein and requiring Whatfix to (i) immediately withdraw, retract, and/or destroy, as applicable, all advertisements, promotions, and other marketing materials containing any and all such false or misleading statements; (ii) publish

1   appropriate corrective advertising; and (iii) withdraw from any customer contract awarded based

2   on these false and misleading statements;

3         2.      Issue preliminary and permanent injunctive relief against Whatfix, and Whatfix's

4   officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all

5   others in active concert or participation with Whatfix, such that they be enjoined and restrained

6   from:

7            (a)      using, imitating, copying, or making any other infringing use of the

8   WALKME Logo in advertising, marketing, or promotion now or hereafter;

9            (b)      engaging in any other activity constituting an infringement of the

10   WALKME Logo, or of WALKME's rights in, or right to use or to exploit, the WALKME

11   Logo; and

12            (c)      assisting, aiding, or abetting any other person or business entity in

13   engaging in or performing any of the activities referred to in subparagraphs (a) through (b)

14   above;

15         3.      Order that Whatfix, and those in active concert with Whatfix, hold in trust, as

16   constructive trustees for the benefit of WalkMe, any and all profits obtained as a direct or

17   proximate result of Whatfix's false and/or misleading advertising statements and/or infringements

18   of the WALKME Logo;

19         4.      Order that Whatfix pay WalkMe's damages and Whatfix's profits pursuant to 15

20   U.S.C. § 1117(a) for Whatfix's willful Lanham Act violations, along with punitive and exemplary

21   damages;

22         5.      Order that Whatfix pay WalkMe damages to compensate WalkMe for the harms

23   directly and proximately caused by Whatfix's inducing breach of contract and/or breach of

24   contract, in an amount to be determined at trial;

25         6.      Order Whatfix to pay to WalkMe pre-judgment interest, post-judgment interest,

26   the costs of this action, and the reasonable attorneys' fees incurred in prosecuting this action; and

27         7.      Grant WalkMe any such other and additional relief as the Court deems just and

28   proper.

Dated: August 8, 2023                    DLA PIPER LLP (US)


By */s/ Rajiv Dharnidharka*
RAJIV DHARNIDHARKA
JEANETTE BARZELAY
Attorneys for Plaintiffs
WALKME LTD. and WALKME, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 8, 2023                    DLA PIPER LLP (US)

By */s/ Rajiv Dharnidharka*
RAJIV DHARNIDHARKA
JEANETTE BARZELAY
Attorneys for Plaintiffs
WALKME LTD. and WALKME, INC.

ACTIVE\1602068667.2