Rajiv Dharnidharka (Bar No. 234756)
rajiv.dharnidharka@us.dlapiper.com
Jeanette Barzelay (Bar No. 261780)
jeanette.barzelay@us.dlapiper.com
Lupe R. Laguna (Bar No. 307156)
lupe.laguna@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel:    650.833.2000
Fax:    650.833.2001

Leon Medzhibovsky (*pro hac vice*)
leon.medzhibovsky@us.dlapiper.com
Matthew Ganas (*pro hac vice*)
matt.ganas@us.dlapiper.com
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:    (212) 335-4630
Fax:    (917) 778-8630

Attorneys for Plaintiffs
WALKME LTD. and WALKME, INC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALKME LTD and WALKME, INC., <br><br> Plaintiff, <br><br> v. <br><br> WHATFIX, INC., <br><br> Defendant. | CASE NO. 4:23-cv-03991-JSW <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR (1) TEMPORARY RESTRATING ORDER; (2) ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION; AND (3) EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **[REDACTED VERSION]** <br><br> Hearing Date: <br> Hearing Time: <br> Location: Courtroom 5 <br> Judge: Honorable Jeffrey S. White |

**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRATING ORDER,**

**ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION, AND**

**FOR EXPEDITED DISCOVERY**

**TO DEFENDANT WHATFIX, INC. AND ITS COUNSEL:**

PLEASE TAKE NOTICE THAT, at a time to be set by the Court, Plaintiffs WalkMe Ltd. and WalkMe, Inc. ("Plaintiffs" or "WalkMe"), in the courtroom of the Honorable Jeffrey White, Oakland Courthouse, Courtroom 5 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612, will and hereby do move for entry of a temporary restraining order ("TRO"), an order to show cause why a preliminary injunction should not be issued ("OSC re PI") against Defendant Whatfix, Inc. ("Defendant" or "Whatfix"), and for expedited discovery.  Pursuant to Federal Rule of Civil Procedure 65(a) and Civil Local Rule 65-2, WalkMe moves this Court for a TRO pending an OSC re PI against Whatfix, prohibiting Whatfix from accessing or attempting to access WalkMe's non-public services, platforms, or computer systems; and/or inducing, directing, soliciting, engaging, or otherwise communicating with any WalkMe customer for purposes of securing WalkMe user account invitations, activations, or reactivations for, or on behalf of, any Whatfix agent, servant, employee, or representative.  WalkMe also requests expedited discovery in support of its request for a preliminary injunction pursuant to Federal Rule of Civil Procedure 26.

The Motion is made because (1) absent immediate, temporary relief from this court, WalkMe will suffer irreparable harm, including unlawful access and disclosure of its proprietary information to a competitor for the purposes of undercutting WalkMe's competitive position and goodwill; (2) WalkMe is likely to succeed on the merits of his claims against Whatfix; (3) the balance of equities tips sharply in favor of WalkMe; and (4) the public interest supports the issuance of injunctive relief. No bond should be required.  WalkMe's Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of Paul Senatori and Matthew Ganas filed concurrently, all matter subject to judicial notice or on file in this matter, and such argument and evidence as may be presented at the hearing.  WalkMe provided notice to Whatfix on September 1, 2023.  Whatfix communicated that it would not stipulate to WalkMe's relief on September 5, 2023.

1    Dated: September 6, 2023              **DLA PIPER LLP (US)**

2                                          By: /s/ *Rajiv Dharnidharka*
                                               RAJIV DHARNIDHARKA
3                                              JEANETTE BARZELAY
                                               LUPE LAGUNA
4                                              Attorneys for Plaintiffs
                                               WALKME LTD. and WALKME, INC.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ...................................................2

III.   STATEMENT OF FACTS .....................................................................................2

    A.   WalkMe's Proprietary Digital Adoption Platform Software Solutions. ...............2

    B.   WalkMe's Subscription-Based Customer Relationships. ......................................2

    C.   WalkMe's Terms of Service. .................................................................................3

    D.   WalkMe Discovers Unauthorized Intrusions By Whatfix Hackers Through Customer Accounts. ...............................................................................................4

    E.   WalkMe Demands Whatfix Account For and Cease Its Unlawful Conduct..........5

    F.   WalkMe Learns of Continued Whatfix Hacks After Receiving WalkMe's Demand Letter And After Being Served With the Complaint. .............................6

IV.    LEGAL STANDARD ............................................................................................7

V.     ARGUMENT .........................................................................................................7

    A.   WalkMe is Likely to Prevail on Its Claims. .........................................................7

    B.   WalkMe Will Suffer Immediate and Irreparable Harm Absent An Injunction. ...........................................................................................................9

    C.   The Balance of Equities Tips Sharply in WalkMe's Favor. ...............................11

    D.   Injunctive Relief is in the Public's Interest. .......................................................12

    E.   No Bond Should Be Required. .............................................................................12

VI.    WALKME SHOULD RECEIVE EXPEDITED DISCOVERY .........................13

VII.   CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Kornrumpf*,
  No. C 10-2769 CW, 2011 WL 6303358 (N.D. Cal. Dec. 16, 2011) ...................................... 11

*Alaska v. Native Village of Venitie*,
  856 F.2d 1384 (9th Cir. 1988) .................................................................................................. 7

*Albert's Organics, Inc. v. Holzman*,
  445 F. Supp. 3d 463 (N.D. Cal. 2020) ..................................................................................... 7

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ........................................................................................... 7, 15

*Am. Legalnet, Inc. v. Davis*,
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) ................................................................................. 13

*Apple Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ...................... 11

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
  No. 19-4162 SBA, 2021 WL 1186335, at *10 (N.D. Cal. Mar. 1, 2021) .............................. 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................................. 9

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012) ............................................................................................... 10

*Chem-Tainer Industries Inc. v. Wilkin*,
  CV 97-0829LGB(EX), 1997 WL 715014 (C.D. Cal. Feb. 24, 1997) .................................... 11

*Comet Techs. United States of Am. Inc. v. Beuerman*,
  No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ........................ 10, 12

*Dimension Data N. Am. V. NetStar-1, Inc.*,
  226 F.R.D. 528 (E.D.N.C. 2005)............................................................................................ 13

*Doran v. Salem Inn, Inc.*
  422 U.S. 922 (1975) ............................................................................................................... 10

*E. W. Bank v. Shanker*,
  No. 20-CV-07364-WHO, 2021 WL 3112452 (N.D. Cal. July 22, 2021) ................................ 9

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) .................................................................................................... 10

ii

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
    415 U.S. 423 (1974) ................................................................................................. 7

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) ................................................................ 11

*Jorgensen v. Cassiday*,
    320 F. 3d 906 (9th Cir. 2003) ............................................................................... 12

*Patino v. Franklin Credit Mgmt. Corp*,
    No. 16-cv-02695-LB, 2017 WL 1246853 (N.D. Cal. Apr. 5, 2017) ........................ 7

*Semitool, Inc. v. Tokyo Electron America*,
    208 F.R.D. 273 (N.D. Cal. 2002) ......................................................................... 13

*Starcom Mediavest Grp., Inc. v. Mediavestw.com*,
    2010 WL 3564845 (N.D. Cal. Sept. 13, 2010) ..................................................... 12

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co. Inc.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................................... 7, 10

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
    766 F.2d 1319 (9th Cir. 1985) ............................................................................. 12

*W. Directories, Inc. v. Golden Guide Directories, Inc.*,
    2009 WL 1625945 (N.D. Cal. June 8, 2009) ....................................................... 11

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ................................................................ 12

*Winter v. NRDC Inc.*,
    555 U.S. 7 (2008) ................................................................................................... 7

**Rules and Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 9

Fed. R. Civ. P. 26(d) ................................................................................................. 13

Fed. R. Civ. P. 26(d)(2) ............................................................................................. 13

Fed. R. Civ. P. 26(f) .................................................................................................. 13

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 14

Fed. R. Civ. P. 65(c) ................................................................................................. 12

PLAINTIFF'S MEMO OF P&A ISO MOTION FOR TRO,
OSC RE PRELIM. INJ., & EXPEDITED DISCOV.
CASE NO. 4:23-CV-03991-JSW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

WalkMe is a leading software solutions innovator and developer of the industry's first Digital Adoption Platform ("DAP") product launched in 2012.  Whatfix is a competitor that has built its business around undercutting WalkMe on price while continually hacking and copying its system.  Even after WalkMe filed this lawsuit against Whatfix, Whatfix continues to attempt to hack its platform, which makes this motion for a TRO and OSC re PI necessary along with expedited discovery.  To be certain, Whatfix employee Dipit Sharma last attempted to hack into WalkMe's system unlawfully at least ***eleven times*** on August 24, 2023 using the email address dipit.sharma@whatfix.com:



WalkMe notified Whatfix of Mr. Sharma's most recent log-in attempts in connection with the instant motion. Declaration of Matthew Ganas ("Ganas Decl.") ¶¶ 13-16, Ex. P.  Whatfix responded admitting that Mr. Sharma attempted to access one of WalkMe's customer accounts "for competitive analysis purposes." *Id.* ¶ 17, Ex. P.  Thankfully, WalkMe blocked Mr. Sharma's August 24, 2023 log-in attempts, but not before Mr. Sharma previously succeeded in illicitly accessing WalkMe's platform through the same account, presumably for the same purpose, on at least ***30*** separate occasions.  WalkMe has no choice but to seek this TRO and OSC re PI to protect its business and goodwill in the industry.  Expedited discovery will assist WalkMe – and the Court – assess the extent of Whatfix's wrongdoing and shape the scope of the necessary injunction, particularly in light of Whatfix's admission that one of its product developers sought to access WalkMe's secure platform for "competitive analysis purposes." *Id.*

1

## II.      STATEMENT OF ISSUES TO BE DECIDED

Whether Whatfix must be restrained and enjoined by court order to stop it from unlawfully accessing WalkMe's platform?

Whether WalkMe should be granted expedited discovery to assess the extent of Whatfix's wrongdoing and shape the scope of the necessary injunction?

## III.     STATEMENT OF FACTS

### A.      WalkMe's Proprietary Digital Adoption Platform Software Solutions.

WalkMe develops propriety Digital Adoption Platform ("DAP") software solutions. Declaration of Paul Senatori ("Senatori Decl.") ¶ 3.  Generally speaking, DAP software solutions include features layered on top of other software products, apps, or websites.  *Id.*  WalkMe's DAP includes software solutions designed to aid WalkMe's customers' end users (both employees and consumers) in more effectively using their existing enterprise software systems and technology, and enhancing productivity by increasing adoption and use of customers' software systems.  *Id.* WalkMe commercializes its customizable DAP software through subscription agreements and related order forms with customers.  *Id*. ¶ 4.  The commercial success of WalkMe's cutting-edge DAP software is a function of WalkMe's innovation, substantial research and development, and customizations driven by data and analytics relating to how WalkMe's customers and their employees and customers utilize enterprise software applications.  *Id.*  Indeed, for Fiscal Year 2022, WalkMe reported a research and development spend of $59.5 million, which represented 24% of WalkMe's revenue for the same period.  *Id.*

### B.      WalkMe's Subscription-Based Customer Relationships.

As a dedicated innovator, WalkMe actively takes steps to protect its DAP software.  *Id.* ¶ 5. This includes, for example, strict confidentiality and restricted use provisions in its subscription-based customer agreements and Terms of Service.  *Id.* ¶¶ 5, 8.  Generally, WalkMe's customers have one or more employees with administrative rights to its DAP software, which include the ability to create additional account users subject to the restrictions of their governing subscription agreements and order forms with WalkMe.  *Id.* ¶ 5.  Access to WalkMe customer implementations

2

of its DAP software is password-protected. *Id.* ¶ 6. Thus, each user associated with a given customer account must be issued unique log-in credentials to access the WalkMe DAP implementation made available to, and often customized for, that customer. *Id.* ¶ 6. Most relevant to this Motion are WalkMe's subscription agreements with three current or former customers: ███████, ███████████████, and █████. *Id.* ¶ 7. Each of these WalkMe customer agreements contains confidentiality provisions that restrict customers from sharing access to WalkMe's proprietary systems with WhatFix. *Id.* ¶ 7, Ex. A § 6.1, Ex. B §§ 5.3, 7.1, Ex. C §§ 2.3, 13.1, 13.2. At the very least, as relevant to this Motion, WhatFix had actual knowledge of these provisions when WalkMe served Whatfix with unredacted copies of its complaint on August 10, 2023. *See* ECF No. 10.

### C.    WalkMe's Terms of Service.

In addition to the subscription agreements that WalkMe entered into with its customers, WalkMe implements Terms of Service, published on its website, which govern the use of certain WalkMe systems and services, including by non-customer end-users. Senatori Decl. ¶ 8, Ex. D. WalkMe's Terms of Service govern use of WalkMe's website, "any additional website and/or web pages owned and/or operated by WalkMe…, as well as the services listed in Section 1 [of the Terms of Service], including [WalkMe's] Community Portal." *Id.*, Ex. D. Section 1, in turn, provides that the Terms of Service govern access and use of the following WalkMe services: WalkMe Free Edition, WalkMe Editor, WalkMe Player, WalkMe Analytics, WalkMe Visions, WalkMe University, WalkMe World Community Portal, and QA Recorder. *Id.*

Section 6 of the Terms of Service ("Use Restrictions") enumerates "[c]ertain conduct [that] is strictly prohibited on and/or with respect to the Services." Pursuant to Section 6 of the Terms of Service, end-users of WalkMe's Services agree not to do the following:

> (i) copy, modify, adapt, translate, reverse engineer, decompile, or disassemble the Services (or any part thereof);… (vii) sell, license, or exploit for any commercial purposes any use of or access to the Services; (viii) frame or mirror any parts of the Services without WalkMe's prior express written authorization; (ix) create a database by systematically downloading and storing all or any of the content from the Services; (x) impersonate any person or entity or provide false or misleading personal information; (xi) use the Services for any illegal, immoral or unauthorized purpose."

*Id.* at § 6.

D.      **WalkMe Discovers Unauthorized Intrusions By Whatfix Hackers Through Customer Accounts.**

In April 2023, WalkMe detected and began to investigate suspicious user activity on its platform originating from its ██████ and ████ customer accounts.  Senatori Decl. ¶ 9.  Thankfully here, the WalkMe platform records session logs of user activity as a feature disclosed and available to customers designed to enhance product functionality and support.  *Id.*  As part of its investigation, WalkMe reviewed recorded web sessions and activity logs for certain ██████ and ████ user accounts and noticed that these accounts were being accessed and used in unusual ways.  *Id.*  WalkMe discovered that Whatfix caused ██████ and ████ to create several new accounts for Whatfix employees with ████ and ████ email address extensions, and it was these Whatfix employees that were surreptitiously hacking and seeking to copy the WalkMe platform in clear violation of WalkMe's customer agreements and the Terms of Service.  *Id.* ¶ 10.

Specifically, on April 21, 2023, ██████ created three new user accounts using ██████ email addresses: (1) apoorva.mittal@██████.com; (2) sanjna.chebium@██████.com; and (3) aman.singh@██████.com.  *Id.* ¶ 11.  These accounts appear to have been created at Whatfix's direction for three Whatfix employees, including one "Solutions Engineer": (1) Apoorva Mittal, (2) Sanjna Chebium, and (3) Aman Singh.  *Id.* ¶ 11; Ganas Decl. ¶¶ 5-7, Exs. H-J (LinkedIn Profiles).  The Whatfix employees used these specific accounts from April 21 to April 27, 2023, to gain unlawful access to a host of confidential and proprietary information, including at least six separate implementations of the WalkMe platform for ████.  Senatori Decl. ¶ 11.

Separately, WalkMe discovered three new user accounts associated with the following ████ email address extensions: (1) rbhati@████.com, (2) pprige@████.com, and (3) pbhattacharya@████.com.  *Id.* ¶ 12.  These user accounts were created for and used by Whatfix hackers (Rupender Bhati, Paula Prigge, and Priyansh Bhattacharya) from at least March 28 to April 14, 2023 to penetrate the WalkMe platform.  *Id.*; Ganas Decl. ¶¶ 8-10, Exs. K-M (LinkedIn Profiles).

WalkMe's recorded web sessions and activity logs show that these Whatfix hackers probed, exploited, and compromised various aspects of WalkMe's DAP software systems, targeting workflows, tasks, content, permissions, integration capabilities, and user engagement metrics to gain

insights into WalkMe's product and customized user experience.  Senatori Decl. ¶ 13.  The Whatfix hackers also accessed underlying rule configurations driving the workflows and content displayed at customer deployment sites, downloaded data and PDF documents, and accessed supporting documentation to gain a deeper understanding of WalkMe's processes and product.  *Id*.  The Whatfix users accessed numerous features, deployments, and data that would allow Whatfix to gain competitive, proprietary knowledge and information which it otherwise cannot access.  *Id*. ¶ 14.

This information is proprietary to WalkMe and constitutes Confidential Information under the ████ Agreement and the ████ Agreement.  *Id*. ¶ 15, Ex. A § 6.1, Ex. B § 7.1.  The Whatfix hackers' improper access of and visibility into such information affords Whatfix a substantial and unfair competitive advantage by enabling Whatfix to, among other things, unlawfully replicate WalkMe's solutions, features, and customizations and undercut WalkMe with a less costly offering, tailor its product offerings to specific customers based on insights gained, and unlawfully displace WalkMe from its existing customer accounts using WalkMe's own application and data.  *Id*. ¶¶ 15, 19, 22, 24, 26, 27.

### E.   WalkMe Demands Whatfix Account For and Cease Its Unlawful Conduct.

On June 23, 2023, WalkMe sent Whatfix a demand letter.  Ganas Decl. ¶ 3, Ex. F.  In relevant part, the letter addressed the information known about the Whatfix hackers, demanded that Whatfix immediately stop its unauthorized access, and account for every such Whatfix hack over the past five years.  *Id.*

Whatfix responded on June 30 and claimed that any such access was associated only with customer migration and that Whatfix had not made any use of what its hackers saw in the WalkMe platform.  *Id.* ¶ 4, Ex. G.  Whatfix otherwise ignored WalkMe's demands.  *Id.*  Notably, customer migration does not require any such access because WalkMe provides a tool for migration of customer-owned data.  Senatori Decl. ¶ 16.  But even if customer migration was a legitimate purpose for a competitor to access the WalkMe platform (which it is not), the Whatfix activities in the WalkMe platform were not for (much less limited to) customer migration.  *Id.* ¶¶ 17-19, 22.

Based on Whatfix's refusal to comply with WalkMe's demand letter, WalkMe filed this lawsuit on August 8, 2023 and served Whatfix on August 10, 2023.  ECF Nos. 1, 10.

**F.**   **WalkMe Learns of Continued Whatfix Hacks After Receiving WalkMe's Demand Letter *And After Being Served With the Complaint.***

As WalkMe has discovered, even after receiving and responding to WalkMe's June 23 demand letter, Whatfix continued attempting to hack and gain unlawful access to WalkMe's platforms through at least its ▇▇▇ customer account.   Senatori Decl. ¶¶ 20-22.

WalkMe has discovered that beginning on August 5, 2022, two Whatfix hackers obtained WalkMe user accounts associated with the ▇▇▇ customer account (Aniket.nikam2000@gmail.com, and dipit.sharma@whatfix.com).  *Id.* ¶ 20; Ganas Decl. ¶¶ 11-12, Exs. N, O (LinkedIn Profiles).  Dipit Sharma is a Whatfix ***Product Manager***, with responsibility for Whatfix product design and management.  Senatori Decl. ¶ 20; Ganas Decl., Ex. O.  Typically, Product Managers in the technology and software solutions industry are responsible, among other things, for overseeing the design and development of new product features and capabilities based on customer needs and market trends.  Senatori Decl. ¶ 20.  They are ***not*** responsible for customer migration from an old provider to a new one nor for any other tasks related to new customer implementation.  Through its ongoing investigation, WalkMe believes Mr. Sharma accessed WalkMe's platform more than 30 times between September 1, 2022 and August 3, 2023, using ▇▇▇, a former WalkMe customer, to unlawfully access WalkMe's software systems.  *Id.* ¶ 20.

Even after Whatfix was served with the Complaint in this lawsuit, Whatfix hackers, including Mr. Sharma, continue to attempt to access the WalkMe platform, which necessitates this Motion.  Senatori Decl. ¶ 21.  WalkMe discovered the existence of Mr. Sharma's account on August 21, 2023, and immediately suspended it.  *Id.*  Nonetheless, as noted in the introduction, Mr. Sharma attempted to access the WalkMe platform ***eleven times*** on August 24, 2023.  *Id.* ¶ 21, Ex. E.  Indeed, Whatfix has admitted that Mr. Sharma most recently attempted to access WalkMe's secure platform for "competitive analysis purposes."  Ganas Decl., ¶ 17, Ex. P.  Without a court order, Whatfix's brazen misconduct will continue.

1   **IV.   LEGAL STANDARD**

2       A temporary restraining order "preserves the status quo and prevents irreparable harm until

3   a hearing can be held on a preliminary injunction application." *Patino v. Franklin Credit Mgmt.*

4   *Corp*, No. 16-cv-02695-LB, 2017 WL 1246853, at *1 (N.D. Cal. Apr. 5, 2017) (*citing Granny*

5   *Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)).

6   The standard for granting a temporary restraining order is "substantially identical" to the standard

7   for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co. Inc.*,

8   240 F.3d 832, 839 n.7 (9th Cir. 2001).   "A plaintiff seeking a preliminary injunction must establish

9   that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

10  of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

11  public interest." *Winter v. NRDC Inc.*, 555 U.S. 7, 20 (2008); *see also Alaska v. Native Village of*

12  *Venitie*, 856 F.2d 1384, 1388 (9th Cir. 1988) (articulating same four-factor test for TROs).  Under

13  this Court's interpretation of the *Winter* factors, injunctive relief also may be warranted where there

14  are "'serious questions going to the merits and a balance of hardships that tips sharply towards the

15  plaintiff can support issuance of a preliminary injunction," provided the plaintiff also makes a

16  showing on the other two factors.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135

17  (9th Cir. 2011); *Patino*, 2017 WL 1246853, at *1.

18  **V.   ARGUMENT**

19      **A.   WalkMe is Likely to Prevail on Its Claims.**

20      The evidence—even without the benefit of discovery—supporting WalkMe's claims is

21  overwhelming.  Based on the record to date, WalkMe is highly likely to succeed on its inducing

22  breach and UCL claims.

23      Whatfix's unauthorized intrusions have induced breaches of multiple contracts. To establish

24  tortious inducement to breach a contract, WalkMe must establish "(1) a valid contract between

25  plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional

26  acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

27  disruption of the contractual relationship; and (5) resulting damage." *Albert's Organics, Inc. v.*

28

7

1  *Holzman*, 445 F. Supp. 3d 463, 477 (N.D. Cal. 2020).  It is undisputed that WalkMe has valid

2  contracts with ███████, █████, and ██████.  Senatori Decl., Exs. A-C.  Further, it is undisputed that

3  Whatfix had actual knowledge of the contracts, and their confidentiality provisions, by the time of

4  the latest unauthorized intrusions because it has engaged in continued efforts to displace WalkMe

5  from existing known contracted customer relationships and ***it had already been served with this***

6  ***action's complaint***, which detailed relevant contracts and provisions. ECF Nos. 1, 10.

7      And those provisions plainly prohibit non-parties, such as Whatfix, from using customer

8  credentials to access the WalkMe platform for competitive purposes, thereby making Whatfix's

9  conduct certain to result in breach.  Senatori Decl., ¶ 7, Ex. A § 6.1, Ex. B §§ 5.3, 7.1, Ex. C §§ 2.3,

10  13.1, 13.2.  But that is precisely what Whatfix has done and is still doing.  *Id.* ¶¶ 13-15, 17-22; Ganas

11  Decl. ¶ 17, Ex. P.  For instance, WalkMe's evidence plainly shows that Mr. Sharma, a Whatfix

12  ***Product Manager***, accessed and interacted with WalkMe's customer implementation for ██████ on

13  more than ***30*** occasions, including approximately a dozen times since ██████ contract cancellation

14  became effective in March 2023, with eleven attempts as recently as August 24, 2023.  Senatori

15  Decl. ¶¶ 20-22.

16      Indeed, Whatfix does not, and cannot, dispute that these intrusions have occurred.  *See* Ganas

17  Decl. ¶ 4, Ex. G.  Instead, in its June 30 letter, Whatfix claimed that its hackers accessed the ██████

18  and ██████ customer accounts "to facilitate migration of the content for these customers to the

19  Whatfix platform."  *Id*.  This excuse holds no water.  First, WalkMe offers its customers a content

20  migration tool to be used when a customer transitions services to another vendor, which does not

21  require granting Whatfix sweeping access to WalkMe's proprietary systems.  Senatori Decl. ¶ 16.

22  Second, even assuming Whatfix tells WalkMe's customers that its activities will be limited to

23  purported content migration, WalkMe's evidence indisputably shows that Whatfix's activities

24  within the WalkMe platform have gone far beyond that which could be necessary for this limited

25  purpose.  *Id.* ¶ 17.  For example, ████████████████████████████████████████████████

26  ████████████████████████████████████.  *Id.* ¶ 18.  Yet, WalkMe's recorded web sessions

27  show that the Whatfix hackers accessed and explored at least five other WalkMe system

28

8

implementations running on other software systems unrelated to this HR implementation or client migration.  *Id.* ¶¶ 18, 19.  Moreover, as Whatfix admits, purported content migration does not explain why Whatfix's **Product Manager** responsible for product design continued accessing and attempting to access the WalkMe platform via the ▮▮▮ account in August 2023, several months *after* ▮▮▮ services agreement terminated in March 2023.  *Id.* ¶¶ 20-22; Ganas Decl. ¶ 12, Ex. O.  Indeed, Whatfix admitted that Mr. Sharma's most recent attempted hacks were for "competitive analysis purposes."  Ganas Decl. ¶ 17 Ex. P.

WalkMe is also likely to prevail on its UCL claim.  The UCL broadly prohibits competitor conduct that is unfair, fraudulent, or unlawful. Cal. Bus. & Prof. Code § 17200.  An "unlawful" practice under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). For the reasons described above, Whatfix has engaged in an unlawful business practice by accessing WalkMe's systems without authorization. This conduct entitles WalkMe to injunctive relief under the UCL.  *See* Cal. Bus. & Prof. Code § 17200.  Thus, WalkMe has a substantial likelihood of prevailing on both its inducing breach and UCL claims.

**B.**      **WalkMe Will Suffer Immediate and Irreparable Harm Absent An Injunction.**

WalkMe has suffered, and will continue to suffer, irreparable harm in multiple ways. "Courts concur that a defendant's ability to gain a competitive advantage through the use of confidential information to develop a competing product is sufficient to constitute irreparable harm." *E. W. Bank v. Shanker*, No. 20-cv-07364-WHO, 2021 WL 3112452, at *12 (N.D. Cal. July 22, 2021) (citation omitted).  Here, Whatfix has hacked – and is actively seeking to continue to hack – WalkMe's confidential information in its platform and is using what it has learned to enhance its competing platform. Senatori Decl. ¶¶ 13-15, 17, 19, 22, 26, 27.  By doing so, Whatfix is unfairly and unlawfully obtaining a competitive advantage over WalkMe by using WalkMe's own confidential business information and data to gain a head start on building new features, functions, and customer-specific customizations without having to invest the substantial amount of time and

9

financial resources in development and startup costs that WalkMe has.  *Id.* ¶¶ 4, 13-15, 17, 19, 22.
An injunction is necessary to prevent further irreparable harm to WalkMe due to this unlawful
conduct.  *See E.W. Bank*, 2021 WL 3112452, at *12 (finding "likelihood of irreparable harm" where
"absent a preliminary injunction, [plaintiff] will likely suffer loss of market position, loss of current
and prospective customers, and increased risk of further disclosure of [plaintiff's] Confidential
Information to third parties.").

        In addition, damage to the goodwill of WalkMe's business supports a finding of irreparable
injury.  *See, e.g.*, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841
(9th Cir. 2001) (holding that evidence of loss of customer goodwill supports finding of irreparable
harm).  Irreparable harm also includes, but is not limited to, a substantial loss in business, *Doran v.
Salem Inn, Inc.* 422 U.S. 922, 932 (1975), loss of market share, *Grand River Enter. Six Nations, Ltd.
v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007), and price erosion, loss of goodwill, and lost business
opportunities, *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Here,
WhatFix's conduct, if permitted to continue, will certainly result in WalkMe losing a substantial
amount of its goodwill and business.  Senatori Decl. ¶¶ 24, 25.  By accessing WalkMe's system
without authorization, Whatfix will be able to replicate WalkMe's proprietary applications without
needing to invest the same substantial time and resources that WalkMe was required to invest.  *Id.*
¶¶ 4, 15, 19.  In turn, Whatfix will be able to continue undercutting WalkMe in price, *see id.* ¶¶ 15,
26, while simultaneously falsely advertising about the quality of WalkMe's products. *See ECF No.
1 ¶¶ 47-57. *See Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018
WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (finding irreparable harm where "Defendant took
proprietary information relating to a new product from Plaintiff and immediately began working for
one of Plaintiff's competitors, which indicates Plaintiff risks losing customers as a result of
Defendant's conduct"); *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 19-4162 SBA, 2021
WL 1186335, at *10 (N.D. Cal. Mar. 1, 2021), *vacated in part (on other grounds)*, No. 2021-1839,
2022 WL 1530491 (Fed. Cir. May 16, 2022) (irreparable harm shown where Plaintiff and Defendant
were direct competitors, and Defendant "acquired, and in some instances used, confidential

information belonging to [Plaintiff] to assist [Defendant] in developing [a competing product].");
*Adobe Sys. Inc. v. Kornrumpf*, No. C 10-2769 CW, 2011 WL 6303358, at *4 (N.D. Cal. Dec. 16, 2011) (finding that "[t]he harm to [plaintiff's] reputation, goodwill and ability to control the distribution of its software is sufficient to establish irreparable harm," where defendant placed unauthorized version of plaintiff's OEM software into stream of commerce in violation of plaintiff's licensing restrictions).

Indeed, courts have concluded that the harm from such conduct is so great that it can warrant a permanent injunction. *See, e.g., Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (granting permanent injunction against defendant that exceeded scope of license for purposes of redistributing downstream).  To be sure, this injury cannot be remedied by money damages only because "while lost sales and profits may be compensable . . . the loss of customers and goodwill may not be. In a highly competitive market, injury to market share can constitute irreparable harm."  *Chem-Tainer Industries Inc. v. Wilkin*, CV 97-0829LGB(EX), 1997 WL 715014, at *8 (C.D. Cal. Feb. 24, 1997).

## C.   **The Balance of Equities Tips Sharply in WalkMe's Favor.**

The balance of equities tips strongly in favor of issuing a preliminary injunction. In stark contrast to the irreparable harm WalkMe has suffered and will continue to suffer in the absence of an injunction, Whatfix will suffer no cognizable harm from the issuance of the injunction requested by WalkMe, which requires Whatfix to comply with its legal obligations and stop unlawfully accessing WalkMe's platform.  *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (balance of hardships favored granting TRO, where proposed injunction would "do no more than require Defendant to comply with federal and state . . . laws"); *W. Directories, Inc. v. Golden Guide Directories, Inc.*, No. C. 09-1625, 2009 WL 1625945, at *7 (N.D. Cal. June 8, 2009) ("Defendants would not suffer hardship if the Court entered a narrowly tailored injunction prohibiting them from employing unlawful means to compete against Plaintiff.").  In short, Whatfix will suffer no undue harm because it will "not be prohibited from 'engaging in activity that is

proper.'"  *Cook*, 191 F. Supp. 3d at 1077.  Thus, the balance of equities favors enjoining Whatfix's unlawful intrusions.

### D.    Injunctive Relief is in the Public's Interest.

WalkMe's requested relief is in the public interest.  "Courts often find that the public has a strong interest in protecting intellectual property rights.  Relatedly, an injunction would also promote fair and lawful competition in an emerging market."  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019).  Here, the public interest would be disserved if Whatfix is allowed to indiscriminately access a competitor's systems for the purpose of promoting a copycat product.  There is no competing public interest weighing against an injunction, and WalkMe's requested relief should be granted.

### E.    No Bond Should Be Required.

WalkMe should not be required to post a bond under Fed. R. Civ. P. 65(c).  "Rule 65(c) invests the district court with discretion as to the amount of security required, if any."  *Jorgensen v. Cassiday, III*, 320 F.3d 906, 919 (9th Cir. 2003).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*.; *accord Jorgensen v. Cassiday, III*, 320 F.3d at 919-20 (affirming preliminary injunction with no bond).  Here, no bond should be required, as the proposed injunction simply prohibits Whatfix from unlawfully accessing WalkMe's system and using its confidential information, which they were never entitled to do in the first place.  *See Comet Techs*, 2018 WL 1990226, at *6 (issuing TRO without requiring a bond, because "Defendant was never entitled to disclose or use the information he took from Plaintiff.  Put otherwise, there is no likelihood of harm because the TRO would simply enjoin Defendant from doing something Defendant never had a right to do in the first place").  In addition, WalkMe's strong showing regarding its "likelihood of success on the merits . . . tips in favor of a minimal bond or no bond at all."  *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985); *see also Starcom Mediavest Grp., Inc. v. Mediavestw.com*, 2010 WL 3564845, at *1 (N.D. Cal. Sept. 13, 2010) ("Because [plaintiff] has made such a strong showing of likelihood of success on merits and because

12

the [defendant]'s activities have evinced fraudulent intent and bad faith, the Court shall not require a bond at this time.").

## VI.   WALKME SHOULD RECEIVE EXPEDITED DISCOVERY

WalkMe respectfully requests that it be authorized to conduct narrowly tailored, expedited discovery to assess the extent of Whatfix's wrongdoing, including Whatfix's attempts to access and use information in WalkMe's secure platform for "competitive analysis purposes" (Ganas Decl., ¶ 17, Ex. P), and determine the proper scope of the preliminary injunction with sufficient evidentiary support. Rule 26(d) of the Federal Rules of Civil Procedure allows the Court to authorize expedited discovery before a Rule 26(f) conference for "convenience and in the interest of justice." Fed. R. Civ. P. 26(d)(2); *see also* Advisory Committee Notes to the 1993 amendments to Rule 26(d) (discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction . . .").

The standard for authorizing expedited discovery is "good cause." *Semitool, Inc. v. Tokyo Electron America*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) ("[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Good cause for expedited discovery has been found in cases involving claims of unfair competition or in cases where the plaintiff seeks a preliminary injunction. *Id.* In cases where preliminary injunction motions are pending, courts often permit expedited discovery designed to obtain information required for the preliminary injunction. *See Dimension Data N. Am. V. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005).

In determining whether good cause exists, courts may consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). Under this standard, WalkMe's request for expedited discovery should be granted. WalkMe seeks expedited discovery in connection with its request for

preliminary injunction.  WalkMe would seek narrowly tailored discovery into the following subject matters:

- Documents and communications relating to Whatfix's access to, and attempts to access, WalkMe's platform, including for competitive analysis purposes;

- Internal Whatfix documents and communications relating to any new or revised Whatfix product or feature launches, versions, or rollouts from the time period(s) coinciding with and following Whatfix's unauthorized access to WalkMe's platform;

- Documents and communications relating to or exchanged with ███, ███, and ███, or any other current or former customer of WalkMe with which any Whatfix employee, agent, consultant, or representative has communicated regarding WalkMe account access or credentials, within the past 12 months; and

- Internal Whatfix documents and communications relating to Whatfix's pricing strategies, considerations, or comparisons relative to WalkMe.

WalkMe's discovery requests would be limited to a request for documents and a Rule 30(b)(6) deposition regarding the above subject matter.  The purpose of discovery into the above areas is to establish the additional evidence necessary, if any, to support a preliminary injunction prohibiting Whatfix from accessing or attempting to access WalkMe's non-public services, platforms, or computer systems; and/or inducing, directing, soliciting, engaging, or otherwise communicating with any WalkMe customer for purposes of securing WalkMe user account invitations, activations, or reactivations for, or on behalf of, any Whatfix agent, servant, employee, or representative.

Because the expedited discovery is narrowly tailored, there is little burden to Whatfix, particularly if it claims that it did not access WalkMe's platform without authorization.  That said, the expedited discovery has been necessitated by the actions of Whatfix's own employees, who indisputably are continuing their efforts to access WalkMe's platform.  Further evidence detailing the extent of Whatfix's intrusions and unfair competitive tactics, and the harm it is causing to

WalkMe, is in the exclusive control of Whatfix and cannot be obtained before the preliminary injunction hearing without expedited discovery.

## VII.   <u>CONCLUSION</u>

The Court should grant the motion and issue the TRO requested along with an OSC re preliminary injunction without any bond.  Whatfix's conduct is egregious.  There is certainly a "'serious questions going to the merits'" of the claims and a "balance of hardships that tips sharply towards" WalkMe.  *See Alliance for the Wild Rockies*, 632 F.3d at 1135.  Further, the Court should grant WalkMe's request for expedited discovery in advance of the preliminary injunction hearing.

Dated: September 6, 2023                    **DLA PIPER LLP (US)**

By: */s/ Rajiv Dharnidharka*
                      RAJIV DHARNIDHARKA
                      JEANETTE BARZELAY
                      LUPE LAGUNA
                      Attorneys for Plaintiffs
                      WALKME LTD. and WALKME, INC.